UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRAVIS SENTELL DAVIS                                      CIVIL ACTION

VERSUS                                                            NO. 13-6402

ROBERT TANNER ET AL.                                    SECTION "H" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Travis Sentell Davis, is a prisoner currently incarcerated in the Rayburn Correctional Center ("Rayburn") in Angie, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against defendants Rayburn Correctional Center Warden Robert C. Tanner, Dr. Christopher Lartigue (identified by plaintiff as Christopher "Lairtigue") and Dr. Casey McVea, alleging that he was subjected to unconstitutional conditions of confinement which aggravated his mental condition.  He seeks monetary damages, injunctive relief and transfer to another prison facility.

On January 7, 2014, I conducted a telephone conference in this matter. Participating via telephone were plaintiff pro se; Assistant Louisiana Attorney General Phyllis Glazer, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

**THE RECORD**

Davis testified that he is currently incarcerated at Rayburn based upon a February 6, 2013, conviction for aggravated flight from an officer, for which he is serving a two-year prison sentence. Davis confirmed that he makes two kinds of claims in this case: (1) The conditions of his confinement have resulted in aggravation of his mental condition. (2) The treatment he has received for his psychiatric condition has been inadequate or improper.

Davis clarified that despite some indications in his written submissions, he is <u>not</u> making any claim in this case about being forced to take psychiatric medication against his will. He testified that on a single occasion, a nurse <u>attempted</u> to administer a psychotropic medication against his will while he was restrained, but he told her that he was allergic to the medication, and the nurse checked his records and confirmed the allergy, so it was in fact <u>not</u> administered.

Davis stated that he has received and reviewed the medical records that I ordered defendants to produce, Record Doc. Nos. 7 and 15, and that they are accurate, except that he is missing some documents.

He confirmed that his claim in this case relates to the period of his confinement in the "super-max sleet unit" of Rayburn from June 17, 2013 through the date of the <u>Spears</u> hearing, a period of about six months. Davis stated that during those six months,

he has been confined in the same unit, except for one day when he was transferred to the working cellblock, which he said Rayburn officials claimed was a mistake.

Davis confirmed the notations in his medical records that his psychiatric conditions include paranoid schizophrenia, major depression, psychosis and bipolar disorder.  He said he is now 33 years old and has suffered with and received medication for these conditions throughout his entire life.

Davis testified that he has attempted suicide while incarcerated four times, including once at Rayburn, by using razors to cut himself.  He said he cannot "handle" the conditions of the cells in which he is confined, including their small size and heat in the summer.  He said he is taking the medications that he is prescribed and that he is trying not to lose his sanity, but "I'm catching all kind of writeups that are going to keep me locked up in the sleet unit, . . . and I might end up doing something bad to myself, because being in that unit I can't get the proper treatment that I need, mental health or nothing like that, because you're just confined to the cell all day."

Davis said that by "catching writeups" he means that he is being cited for disciplinary infractions when he violates prison rules, including for example by cutting himself, which he said is a violation of Rule 19.  He stated that the more disciplinary violations he commits, the more he is kept confined to his cell.  Davis said he has been cited for violating prison disciplinary rules against self-mutilation, aggravated

disobedience and swallowing razors, but "I have no control over it," because once his psychosis gets aggravated he violates the rules.

Davis confirmed the references in his medical records indicating that he is currently taking risperdal (also known as risperidone) and Prozac for his psychiatric conditions, which were just prescribed by prison doctors, and that he has also taken other medications for these conditions in the past. Davis confirmed that sometimes he refuses to take his medications as prescribed, deciding to stop "on my own," because he gets agitated, especially in the summer. He said he stopped taking the respiradol because it was so hot during the summer and he believed the medication caused him to become dehydrated to the point of passing out. Davis confirmed that he sees a doctor at Rayburn for his psychiatric conditions once a month or every three weeks. He said he cannot tell if his new Prozac prescription is helping him.

As to the conditions of his confinement, he complained that he is kept in "isolation," meaning that "they take your mattress and they don't give it to you till night" to sleep and he cannot go outdoors for recreation, except when given a "break" of nine days for every 20 days in isolation. He explained that these breaks occur in rotation so that during a one-month period, he is kept in isolation for 20 days, then allowed to go outdoors for nine days for periods of about one hour outside per day, during which he walks around in small exercise pens while fully restrained. He also

complained that his cell is so small that "I just can't deal with it." Davis estimated the size of his cell as about six to eight feet wide and a little longer. He said the cell has a bed, a table and a toilet, but no mirror; that he cannot keep toothpaste or deodorant in his cell, but that it is provided to him with his food. He said there is a bright light in his cell, covered by a "metal fence," and the light is turned off at about 10:30 p.m. until 4:00 a.m. during sleep time. Davis said that "depending on the seasons," the cell is either hot or cold. He said the cell has "blowers" and a "heater" permitting "ventilation." He said it is a one-man cell monitored constantly by a camera, "even in the shower," which he must leave his cell to reach.

"I just can't take it, I just can't cope with it," Davis said, contending that his complaints are a function of his mental condition. He complained that he sees a social worker only "once in a blue moon," perhaps once a month, unless he requests a special visit. He also complained that he has no contact with other inmates.

Davis testified that the unit where he is housed is a "level one" security area for inmates who have a large number of disciplinary violations. Davis said his disciplinary violations are a result of his mental conditions, which are exacerbated by the conditions of his continuing confinement in a "super-max" security disciplinary unit. He described his issues as a cycle of his mental problems causing him to commit disciplinary

infractions, including "cutting myself up," resulting in his continuing confinement in disciplinary lockdown.

Davis said he needs to be in "a more therapeutic environment, . . . such as a psychiatric unit, . . . a place where I can get help, that people come and talk to me, and I get the proper medication, . . . somewhere they got a recreation therapist."  He self-diagnosed that his high security conditions of confinement at Rayburn are exacerbating his psychosis and worsening his condition.  He acknowledged that Dr. Lartigue, whom Davis had recently seen at Rayburn, is a psychiatrist who had prescribed Prozac for him and who is scheduled to see Davis again.  He said he had not yet told Dr. Lartigue about his belief that his psychiatric conditions are being made worse by his conditions of confinement at Rayburn.

After the hearing, at my request in light of Davis's testimony that he was scheduled to see Dr. Lartigue concerning his psychiatric conditions within a week or two after the telephone conference, defense counsel provided me and plaintiff with a copy of Dr. Lartigue's medical report.  Record Doc. Nos. 14 and 23.  The report states in pertinent part that Dr. Lartigue is a board certified psychiatrist and that during his session with Davis on January 10, 2014, Davis advised the doctor that Davis believes "the conditions of his confinement, meaning isolation in a single cell . . . is causing an 'exacerbation of my psychosis.'"  Record Doc. No. 23 at p. 1.  Dr. Lartigue wrote that

6

he advised Davis that he "felt the rules of his confinement in isolation were appropriate and potentially therapeutic," given Davis's "long history of recurrent self-injurious behavior of dangerous proportions." The report states that Dr. Lartigue "re-explained" to Davis that he is being treated "for a primary diagnosis of Mixed Personality Disorder and Impulse Control Disorder, and that I felt that this was an appropriate setting for him. . . . Despite his impulse control problems, I firmly believe he has the ability to choose to stop himself from escalating to dangerous behavior and to not hoard dangerous objects. I advised I will continue to do my best to help him make better choices. I will see him in follow up in four weeks." The psychiatrist's written report makes clear that while Davis "does have a severe Personality Disorder," he "does not suffer from Schizophrenia or a Major Depression" and "should not be considered to be 'seriously mentally ill.'" The psychiatrist's conclusion was that Davis "has shown no signs of deterioration here. In fact, he seems to be doing better at this point. However, he is highly likely to return to his manipulative self-injurious behavior if he feels this will help him get transferred out of this facility." Id. at p. 2.

Plaintiff filed an "objection" to Dr. Lartigue's report, alleging that it is manipulative, "contradictive" and falsified. Record Doc. No. 25.

## ANALYSIS

### I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate

indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the

10

factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the

Spears hearing, fails to state a cognizable Section 1983 claim of violation of

constitutional rights, even under the broadest reading.[1]

## II.   CONDITIONS OF CONFINEMENT

Plaintiff's testimony establishes that he was a convicted prisoner at all relevant

times concerning the conditions at Rayburn about which he complains.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment

on convicted prisoners. "Prison conditions constitute cruel and unusual punishment if

they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly

disproportionate to the severity of the crime warranting imprisonment.'"  Hamilton v.

Lyons, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337,

347 (1981); citing Estelle v. Gamble, 429 U.S. 97, 103 (1976); Hutto v. Finney, 437 U.S.

678, 687 (1978)); accord Stanfield v. Gusman, No. 09-7183, 2010 WL 2133877, at *3

(E.D. La. Apr. 21, 2010) (Roby, M.J.), report and recommendation adopted, 2010 WL

2075550 (E.D. La. May 20, 2010) (McNamara, J.).

"Like other Eighth Amendment claims, a conditions-of-confinement claim must

satisfy tests for both objective and subjective components."  Davis, 157 F.3d at 1006

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

(citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)); accord Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); Downey v. Denton County, 119 F.3d 381, 385-86 (5th Cir. 1997). To succeed on a claim of unconstitutional conditions of confinement, this court must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson, 501 U.S. at 298, 303).  If the court finds that either the subjective or objective component of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in Wilson noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes.  Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9.

Thus, conditions within a prison may constitute cruel and unusual punishment if they result in "unquestioned and serious deprivation of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).  Otherwise, "to the extent that such conditions are restrictive and even harsh, they are part of the penalty that

12

criminal offenders pay for their offenses against society." Id. at 347, 101 S. Ct. at 2399. Conditions that "cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Id.  The Eighth Amendment "may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." Wilson v. Lynaugh, 878 F. 2d 846, 849 (5th Cir.), cert. denied, 493 U.S. 969, 110 S. Ct. 417, 107 L. Ed. 2d 382 (1989) (footnote omitted).

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard.  Wilson, 501 U.S. at 303.  "Deliberate indifference," as defined above, means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing Farmer, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." Id. (citing Farmer, 511 U.S. at 842 & n.8).  "'Subjective recklessness,'" as used in the criminal law, is the

appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Davis has alleged no facts which show that defendants or any other party acted with "deliberate indifference" in creating the conditions about which he complains. Plaintiff has not alleged a "serious risk of harm" and has not alleged facts sufficient to show that defendants actually drew an inference that an excessive risk of harm to plaintiff existed because of the conditions he described. In fact, as explained in greater detail below, every aspect of the current record, from Davis's own testimony to the extensive record of his medical treatment, confirms that Davis's placement in a high-security area is wholly appropriate, both as a response to his disciplinary violations and in furtherance of the treatment and monitoring of his mental condition.

Like Davis, most inmates would undoubtedly prefer placement in a prison facility offering a "recreation therapist" and extensive opportunity to socialize with others. However, maintenance of prison discipline and security is a legitimate function of prison officials, who must be accorded broad discretion in that function. <u>See</u> <u>Waganfeald v. Gusman</u>, 674 F.3d 475, 485 (5th Cir. 2012), <u>petition for cert. filed</u>, 81 U.S.L.W. 3064 (U.S. July 18, 2012) (No. 12-85) (citing <u>Whitley v. Albers</u>, 475 U.S. 312, 322 (1986); <u>Bell v. Wolfish</u>, 441 U.S. 520, 546, 547 (1979)) ("[S]ecurity considerations are peculiarly within the province and professional expertise of corrections officials, and, in

the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.") (quotation omitted).  Certainly, preventing Davis from killing or injuring himself by enforcing prison disciplinary rules prohibiting self-mutilation and other dangerous activities is prudent prison administration in furtherance not only of prison discipline and security but also of fulfilling the obligation to protect inmates from harm, even if the risk of harm is self-imposed.

Generally, the Constitution does not give rise to any protectable "interest in avoiding transfer to more adverse conditions of confinement."  See Meacham v. Fano, 427 U.S. 215, 225 (1976) (prisoner has no constitutional interest in avoiding placement in maximum security as opposed to low security facility). Instead, the Constitution provides inmates with protection only from classification or assignment that "imposes atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  Thus, as the United States Supreme Court has noted in another constitutional context concerning inmates' due process rights, placement in a "supermax" prison unit where inmates face more restrictive conditions of confinement than in other facilities does not result in violation of constitutional rights, unless the conditions "impose an atypical and significant hardship within the correctional context."  Wilkinson v. Austin, 545 U.S. 209, 221-24.

15

In this case the restrictive conditions described by Davis do not rise to the level of cruel and unusual punishment proscribed by the Eighth Amendment, or even to the level of a true "super-max" facility of the type described in Wilkinson.  545 U.S. at 214. Unlike in Wilkinson, the light in Davis's cell is not on all day, but is off during sleeping hours at night, and his mattress is returned to him for use during those same sleeping hours.  His cell is fully ventilated, and the surveillance camera monitoring about which he complains is a prudent and permissible security and safety measure, particularly given Davis's propensity for injuring himself. His testimony established that he receives outdoor exercise opportunities for nine (9) days after every twenty (20) days in isolation. While "deprivation of exercise may constitute an impairment of health, which is actionable under the Eighth Amendment," Hewitt v. Henderson, 271 F. App'x 426, 428 (5th Cir. 2008), it is clear that inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation."  Lewis v. Smith, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001) (citing Stewart v. Winter, 669 F.2d 328, 336 n.19 (5th Cir. 1982); Miller v. Carson, 563 F.2d 741, 751 n.12 (5th Cir. 1977)); accord Sampson v. Corrs. Corp., No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (citing Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991); Lato v. Attorney Gen., 773 F. Supp. 973, 978 (W.D. Tex. 1991) (citing Beck v. Lynaugh, 842 F.2d 757, 762 (5th Cir. 1988)).  To succeed on a

claim under Section 1983 for lack of exercise, a prisoner must establish "the existence of any health hazard under the specific circumstances involved." Ruiz v. Estelle, 679 F.2d 1115, 1152 (5th Cir.), amended in part, vacated in part on other grounds, 688 F.2d 266 (5th Cir. 1982); accord Delaney v. DeTella, 256 F.3d 679, 684 (7th Cir. 2001); Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986). Contrary to Davis's allegations and as discussed more fully below in connection with his medical care claim, it is the medical judgment of the psychiatrist who is treating him that the conditions of his confinement are not causing any health hazard but are instead appropriate to the mental condition for which he is being treated and monitored.

The fact that Davis is shackled or otherwise restrained upon leaving his cell to go to the yard for exercise is of no constitutional moment, given his status as a serial disciplinary offender. See Tyson v. LeBlanc, No. 10-1174, 2010 WL 5375955, at *17-18 (E.D. La. Nov. 19, 2010), report & recommendation adopted, 2010 WL 5376330 (E.D. La. Dec. 15, 2010), aff'd, 431 F. App'x 371 (5th Cir. 2011) (requirement that plaintiff remain shackled during outdoor exercise because of his disciplinary status as a recalcitrant offender fails to establish a constitutional violation).

Conditions such as those described by Davis do not allege the kind of serious harm or deprivation of basic human needs resulting from deliberate indifference by prison officials to satisfy either the objective or subjective components required to state

a claim for unconstitutional conditions of confinement. Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and this claim must be dismissed.

III.   MEDICAL CARE

Davis testified that he was a convicted prisoner at all times during which defendants allegedly failed to provide him with adequate medical care.  In Estelle, 429 U.S. at 104, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  As discussed above, only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.  The same Eighth Amendment standards detailed above requiring that "the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's

necessities," id. at 834 (quotation omitted), and that the defendant possessed a culpable state of mind.  Id. (citing Wilson, 501 U.S. at 298, apply to Davis's medical care claim.

In the Section 1983 medical care context, a showing of deliberate indifference to serious medical needs "requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).

In this case, Davis's allegations negate any inference that defendants have acted with deliberate indifference to his medical needs.  Some courts have characterized mental illnesses as a "serious medical need" for purposes of constitutional analysis in Section 1983 claims by prisoners, particularly in circumstances in which the plaintiff also exhibited seriously harmful or severe symptoms or other ailments in combination with a mental illness sufficient to render plaintiff's overall condition serious. See Lemaire v. Maass, 745 F. Supp. 623, 636 n.8 (D. Ore. 1990), vacated on other grounds, 12 F.3d 1444 (9th Cir. 1993) (depression in combination with epilepsy, hypertension and vertigo

presented serious medical need requiring immediate attention); <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1194 (9th Cir. 2002) (manic depressive condition exhibited by wild, physically combative behavior leading to heart attack presented serious medical condition by detainee); <u>Mahan v. Plymouth County House of Corrections</u>, 64 F.3d 14, 16, 18 (1st Cir. 1995) (depression including severe anxiety attacks and other "serious symptoms . . . actually experienced while detained" presumed by the court to constitute serious medical need).  The conditions described by Davis and the medical records that his mental health conditions included self-injurious actions, possibly including suicidal ideation. Thus, for purposes of this report and recommendation, I will assume that Davis's condition presented a serious medical need.

Even assuming, however, that plaintiff's conditions presented serious medical need for constitutional purposes, Davis has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care for his mental conditions while incarcerated in Rayburn.

Davis testified and his medical records confirm that, while in Rayburn, he has been regularly seen both by a psychiatrist and a social worker on at least a monthly basis. Davis has also regularly been provided with a steady stream of appropriately prescribed

medication for his mental conditions.  Significantly, the Rayburn psychiatrist who is currently treating Davis and monitoring his condition has specifically exercised his professional medical judgment in determining that in light of Davis's history of self-abuse and his exhibition of "dangerous behavior," his currently restrictive conditions of confinement are medically appropriate.  Thus, the medical records establish that Davis's conditions are appropriately monitored and addressed by medical personnel in Rayburn.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Greer v. Tran, 124 F. App'x 261, 262 (5th Cir. 2005) (no deliberate indifference to serious medical needs when inmate was tested for diabetes mellitus, which was ruled out, although he ultimately died after falling into a diabetic ketoacidotic coma);  Harris v. Donaldson, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995) (no deliberate indifference where prisoner received medical treatment, including blood monitoring, medication and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for his chronic condition).

Although Davis has alleged that he has not received the kind of treatment he thought was appropriate, and he expressed dissatisfaction with the overall quality of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for <u>medical</u> <u>judgment</u>. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added).  No such showing has been made on the current record.  In Davis's case, the course of his mental health treatment, including his placement in a high security area in the interest of protecting him from self-injury, is a classic example of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Contentions like Davis's that amount to a mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious

medical condition, which ultimately resulted in death, does <u>not</u> constitute deliberate indifference, even if treatment was negligently administered); <u>see also</u> <u>Rowe v. Norris</u>, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

IV.    <u>PENDING MOTIONS</u>

Davis has filed three motions that remain pending, including two motions for injunctive relief, Record Doc. Nos. 4 and 21, and a renewed motion to appoint counsel. Record Doc. No. 30.  For all of the reasons discussed above, Davis's complaint fails to state a claim upon which relief may be granted and must be dismissed.  Accordingly, all three of these pending motions should be denied.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

**IT IS FURTHER RECOMMENDED** that plaintiff's motions for injunctive relief and to appoint counsel, Record Doc. Nos. 4, 21 and 30, should be DENIED.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ___12th___ day of May, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

24